# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                    **Case No.  5:08cr12/RS/CJK**
                                              **5:09cv273/RS/CJK**

**JERROD JASON SANDERS,**
     **Defendant**.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence (doc. 79), filed pursuant to 28 U.S.C. § 2255.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B).  Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

The defendant, Jerrod Jason Sanders, and co-defendant, Michael Louketis, were charged with conspiracy to possess with intent to distribute fifty grams or more of cocaine base (Count I), in violation of 21 U.S.C. §§ 841(b)(1)(A)(iii), and 846. (Doc. 1, p. 1).  The defendant and co-defendant were also charged with possession with intent to distribute fifty grams or more of cocaine base (Count II), in violation of 21 U.S.C. § 841(b)(1)(A)(iii), and 18 U.S.C. § 2.  (Doc. 1, p. 2).  The defendant entered a plea of guilty to all counts as charged (doc. 83, p. 76), and the district court sentenced him to 328 months' imprisonment on Counts I and II (the terms to run concurrently).  (Doc. 70, p. 33).

The facts giving rise to the defendant's present motion follow.  On October 30, 2006, an undercover police officer arrested coconspirator Jermiah White after conducting a controlled buy of a small quantity of cocaine base (commonly known as crack cocaine) in a Panama City, Florida, hotel room.  (PSR ¶ 7).[1]  Following the arrest, Mr. White admitted that between September 1, 2006, and October 30, 2006, he had traveled to Panama City to assist Jerrod Jason Sanders and Michael Louketis with the distribution of cocaine base.  (PSR ¶ 8).  Mr. White told police the defendant and co-defendant were residing at Unit 309 of the Edgewater Condominiums in Panama City.  (PSR ¶ 9).  Mr. White reported seeing multiple ounces of cocaine base in the condominium just days prior to his arrest.  (PSR ¶ 9).  Mr. White also revealed the defendant was wanted in Georgia on state charges of trafficking in cocaine.  (Doc. 83, p. 17).

Based on the information provided by Mr. White, police officers proceeded to the Edgewater Condominiums to arrest the defendant on his outstanding out of state warrant.  (Doc. 83, pp. 17-19).  After talking with Mr. Louketis, police entered the residence and eventually placed the defendant under arrest.  (Doc. 83, p. 43).  In a consensual search of the condominium, the police officers seized more than 100 grams of cocaine base, as well as drug paraphernalia associated with the manufacture and distribution of cocaine base.  (PSR ¶ 9).  On March 18, 2008, the defendant and co-defendant, Louketis, were charged in Counts I and II of the indictment with conspiracy to possess with intent to distribute more than fifty grams of cocaine base, and possession with intent to distribute more than fifty grams of cocaine base.  (Doc.

---

[1] References to the presentence investigation report will be by "PSR" followed by the paragraph number.

1).

The defendant, represented by Edmund Quintana, filed a motion to suppress the evidence seized during the search of the condominium.  (Doc. 35).  Following the denial of the motion (doc. 83, pp. 61-62), the defendant entered into a plea and cooperation agreement with the U.S. Attorney for the Northern District of Florida, whereby he agreed to plead guilty to Counts I and II of the indictment and cooperate with the government's investigations, while reserving the right to appeal the denial of his motion to suppress.  (Doc. 47).  The plea and cooperation agreement provided that "[t]he parties agree that the sentence to be imposed is left solely to the discretion of the District Court."  (Doc. 47, p. 3).  The agreement also specifically provided that "[t]he United States Attorney will not recommend a specific sentence," and "[d]efendant understands that any prediction of the sentence which may be imposed is not a guarantee or a binding promise."  (Doc. 47, pp. 3, 6).  The agreement concluded, "There are no other agreements between the United States Attorney, Northern District of Florida and the Defendant, and the Defendant enters this agreement knowingly, voluntarily and after having conferred with counsel."  (Doc. 47, p. 8).

The court also conducted a model plea colloquy with the defendant.  (Doc. 83, pp. 62-78).  The defendant confirmed he had discussed the terms of the plea and cooperation agreement with his lawyer and understood them.  (Doc. 83, pp. 73-74).  The defendant reiterated that his plea and cooperation agreement represented his entire agreement with the government.  (Doc. 83, p. 73).  The defendant denied that there were any secret or undisclosed promises that had been made to him that were not written in the agreement.  (Doc. 83, p. 73).  He also denied that anyone had made

any promises to him (other than those in the plea and cooperation agreement) to induce him to plead guilty. (Doc. 83, pp. 73-74). Mr. Sanders expressed his satisfaction with his attorney and had no complaints about the attorney's performance. (Doc. 83, p. 74).

After the defendant and his attorney received a copy of the presentence investigation report, they raised two objections relevant to the present motion. First, the defendant objected to the amount of cocaine base attributed to him in the presentence investigation report. (Doc. 87-2, pp. 1-2). The defendant asserted he was not responsible for 8.5 kilograms of cocaine base during the duration of the conspiracy. Prior to the sentencing hearing, Mr. Quintana discussed this objection with the prosecutor and withdrew it because the threshold amount for the same sentencing level was 4.5 kilograms of cocaine base and the defendant's own interview with law enforcement implicated a quantity exceeding that amount. (Doc. 70, p. 12; Doc. 87-5, pp. 2-4; PSR ¶ 18).

The defendant's other objection to the presentence investigation report concerned the offense level adjustment for his role in the offense. (Doc. 87-2, p. 2). Defendant contended it was improper for him to be considered a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive. (Doc. 87-2, p. 2); U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(b) (2007). Defendant's counsel continued to voice this objection at the sentencing hearing. (Doc. 70, pp. 4, 29-30). The court denied the objection after listening to testimony from DEA Special Agent Michael Clear concerning the nature of the conspiracy and the defendant's role in it. (Doc. 70, pp. 12-31).

At the sentencing hearing on August 13, 2008, Mr. Quintana requested the

defendant receive a sentence below that recommended by the sentencing guidelines. (Doc. 70, p. 31).  Mr. Quintana argued that a sentence of fourteen to eighteen years, a sentence closer in length to the one received by Mr. Louketis, would be more appropriate than the one provided for in the guidelines.  (Doc. 70, p. 31).  The court sentenced the defendant to 328 months' imprisonment, within the guideline range of 292 to 365 months.  (Doc. 70, pp. 33-34).  Mr. Quintana did not raise any objections to the sentence other than those that he had previously mentioned.  (Doc. 70, p. 36). The court informed the defendant of his right to appeal his sentence.  (Doc. 70, p. 36). The court asked the defendant if he had any questions and the defendant replied that he did not.  (Doc. 70, p. 36).  The court then concluded the sentencing hearing.  (Doc. 70, p. 36).

The defendant submitted notice of his intent to appeal on August 19, 2008. (Docs. 62 & 63).  The defendant subsequently filed a motion to dismiss the appeal with prejudice on October 31, 2008.  (Doc. 87-3).  The Court of Appeals for the Eleventh Circuit granted the motion to dismiss on November 26, 2008.  (Doc. 76).

## DEFENDANT'S CLAIMS

Pursuant to 28 U.S.C. § 2255, the defendant timely filed the instant motion to vacate, set aside, or correct sentence (doc. 79), asserting four grounds on which he believes he is being held in violation of the Constitution, laws, or treaties of the United States.  The government filed a response in opposition (doc. 87), and the defendant filed a reply to the response.  (Doc. 91). The defendant contends trial counsel rendered ineffective assistance by: (1) failing to reduce the government's alleged plea offer of ten years into writing pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C), and advising defendant not to reveal the ten-year plea offer

to the court; (2) failing to object to the amount of cocaine base attributed to the defendant; (3) failing to object to the defendant's sentence enhancement as a manager or supervisor of criminal activity; and (4) failing to ask the sentencing judge to exercise his discretion in cases involving cocaine base, as established by *Kimbrough v. United States*, 552 U.S. 85 (2007).  (Doc. 79, pp. 17-30).

## ANALYSIS

As a preliminary matter, the court notes certain general rules applicable in § 2255 proceedings following direct appeals, as well as the distinction between review under § 2255 and direct appeal.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Id.*  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law."  *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (*citing McCoy*, 266 F.3d at 1258).

Regarding the important difference between a § 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *See United States v. Addonizio*, 442 U.S. 178, 184 (1979).  Relief should be granted only

if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981))).

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance of counsel claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

Defendant contends in ground one of his motion that counsel provided ineffective assistance by failing to reduce the prosecutor's plea offer of ten years into writing prior to the guilty plea and by instructing the defendant not to reveal the plea

offer to the court.[2] (Doc. 79, pp. 17-20). The defendant maintains that Mr. Quintana's relay of a ten-year plea offer from the prosecutor induced him to plead guilty. (Doc. 79, p. 16).

"The burden of persuasion is on a [defendant] to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). In support of ground one, the defendant relies solely on his own assertions concerning what was promised him and on the affidavit of his aunt, Kesha Bell. (Doc. 79, pp. 11, 34-36). Ms. Bell's affidavit indicates she was told by both the defendant and Mr. Quintana the defendant would serve only ten years in prison if he pled guilty. (Doc. 79, pp. 35).

The government has noted that Ms. Bell's affidavit was neither notarized nor contained information susceptible to authentication. (Doc. 87, p. 20). Additionally, the defendant averred in both his plea and cooperation agreement and sworn plea colloquy that no promises regarding the length of his sentence had been made. (Doc. 47; Doc. 83, pp. 73-74); *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." (*citing Machibroda v. United States*, 368 U.S. 487, 495-96 (1962))). Additionally, both the prosecutor and defendant's counsel, Mr. Quintana, have signed affidavits indicating that a ten-year sentence was never agreed upon. (Doc. 87-4, pp. 1-2; Doc.

---

[2] The defendant's motion indicates that he pled guilty only to Count I of the indictment and Count II was dismissed. (Doc. 79, p. 1). Both the plea and cooperation agreement and the change of plea hearing show defendant pled guilty to both counts of the indictment. (Doc. 47, pp. 1-2; Doc. 83, p.76).

87-5, pp. 1-2).   The prosecutor also noted that, as a matter of policy, the U.S. Attorney's Office in the Northern District of Florida does not promise particular sentences in exchange for guilty pleas because sentencing is left to the discretion of the court. (Doc. 87-5, pp. 1-2).  The defendant's contention that he was promised a ten-year sentence is further belied by his failure to object to Mr. Quintana's request for a fourteen to eighteen-year sentence during the sentencing hearing. (Doc. 70, p. 31).  The claim that Mr. Quintana decided not to reduce the alleged ten-year plea bargain into writing cannot be considered, much less be found unreasonable or prejudicial, when the evidence indicates that no such plea bargain existed.  Neither prong of the *Strickland* test is met.

Defendant's second claim of ineffective assistance of counsel alleges that Mr. Quintana failed to object to the amount of cocaine base attributed to the defendant for the purposes of sentencing. (Doc. 79, p. 20).  More specifically, defendant contends that Mr. Quintana should have objected to the amount of cocaine base attributed to him because the presentence investigation report did not establish co-defendant's conversion of cocaine powder into cocaine base was reasonably foreseeable or within the scope of criminal activity the defendant agreed to undertake. (Doc. 79, p. 20). The defendant also argues the testimony of his co-defendant was not reliable enough to establish that he was accountable for 8.5 kilograms of cocaine base, thus providing Mr. Quintana with another basis to object to the drug weight. (Doc. 79, pp. 20-21).

Mr. Quintana did, however, initially object to the amount of cocaine base attributed to the defendant. (Doc. 87-2, pp. 1-2).  Prior to the sentencing hearing the prosecutor contacted Mr. Quintana and discussed this objection. (Doc. 87-5, pp. 2-4). The prosecutor noted the defendant's own proffer interview with law enforcement

supported the determination he had met the 4.5 kilogram threshold for a sentencing base offense level of 38, the same used for 8.5 kilograms.  (Doc. 87-5, pp. 2-4; PSR ¶¶ 17-18).  Mr. Quintana subsequently decided not to pursue this objection at the sentencing hearing.  (Doc. 70, p. 12; Doc. 87-6, p. 1).

A defendant is only accountable for a coconspirator's "conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant agreed to undertake."  *United States v. Reese*, 67 F.3d 902, 907 (11th Cir. 1995).  In the instant case, the factual basis for the guilty plea provided that the defendant stipulated to the following facts:

> [D]efendant Jerrod Sanders, co-defendant Michael Loukets [sic] and other co-conspirators involved themselves in a conspiracy to acquire, possess and distribute cocaine base, commonly known as crack cocaine. The defendant acquired, either together with Louketis or alone, distribution quantities of cocaine that were then converted into "crack." The defendant would then "front" or provide quantities of the "crack" cocaine on consignment to other persons to be distributed in the Panama City Beach, Florida area or would distribute the "crack" cocaine himself.
>
> . . . [S]ubsequent to their arrival in Panama City Sanders and Louketis pooled their money together to purchase distribution quantities of powder cocaine.  Thereafter, Sanders would convert the powder cocaine into crack cocaine in a condominium rented by Louketis.

(Doc. 48, pp. 1-2).

This fact pattern, which defendant agreed was accurate, establishes that the defendant was involved in the conversion of cocaine powder into cocaine base.  Thus, any similar conversion by the co-defendant was reasonably foreseeable and within the scope of the criminal activity the defendant agreed to undertake.  These facts also undermine the defendant's assertion that his co-defendant's testimony was not

Case 5:08-cr-00012-RH-CJK   Document 142   Filed 08/01/12   Page 11 of 15

Page 11 of 15

reliable, because Mr. Louketis's description of the conspiracy mirrored this factual basis. (PSR ¶¶ 14-16). Mr. White's interview with law enforcement also provided a very similar description of the conspiracy's operation, lending further credence to Mr. Louketis's account. (PSR ¶¶ 10-13). Additionally, when given a chance to speak at his sentencing hearing, the defendant did not choose to voice an objection to the fact that at least 4.5 kilograms of crack had been attributed to him. (Doc. 70, pp. 31-32).

This evidence demonstrates Mr. Quintana's decision not to pursue the objection to the drug weight at the sentencing hearing was not unreasonable. The defendant's stipulation to the factual basis for the guilty plea and his proffer interview with law enforcement indicated that his co-defendant's testimony was truthful, the conversion of cocaine powder to cocaine base was foreseeable, and more than 4.5 kilograms of cocaine base was involved in the conspiracy. *See Strickland* 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Defendant asserts in ground three that Mr. Quintana provided ineffective assistance of counsel by failing to object to the defendant's sentence enhancement for serving as the manager or supervisor of a conspiracy. (Doc. 79, p. 24). As the record demonstrates, however, Mr. Quintana did object to this enhancement. After receiving the presentence investigation report, Mr. Quintana noted his objection to this sentence enhancement. (Doc. 87-2, p. 2). Mr. Quintana continued to voice this objection at

the sentencing hearing, arguing that the defendant was not a manager or supervisor in the conspiracy and occupied a role more akin to that of Mr. Louketis. (Doc. 70, pp. 4, 29-30). To support this sentencing enhancement, the government relied upon the testimony of Special Agent Clear, who discussed the information provided to him by Mr. Louketis, Mr. White, and the defendant. (Doc. 70, pp. 12-27). Special Agent Clear described how the defendant and coconspirators acquired cocaine powder in Georgia, transported it to Florida, converted it to cocaine base, and then distributed the cocaine base. (Doc. 70, pp. 12- 27). Based on Special Agent Clear's testimony, the government argued that Mr. Sanders's role in the conspiracy rose to the level of manager or supervisor and therefore advocated a three-level sentence enhancement. (Doc. 70, pp. 28-29). The court agreed and denied the defendant's objection. (Doc. 70, pp. 30-31).

In sum, Mr. Quintana attempted to persuade the court that the defendant's role in the conspiracy did not warrant a sentencing enhancement as a manager or supervisor. The government presented evidence to the contrary that the court found persuasive. *See Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (noting "the fact that a particular defense ultimately prove[s] to be unsuccessful" does not "demonstrate ineffectiveness"). The adverse fact determination was made by the court, in the face of counsel's argument. Accordingly, Mr. Quintana's actions were neither unreasonable nor resulted in prejudice to the defendant.

Defendant contends in his final claim of ineffective assistance of counsel that "Mr. Quintana failed to ask the [court] to exercise it's [sic] discretion under *Kimbrough v. United States* and sentence [him] below the guideline range . . . ."

(Doc. 79, pp. 29-30) (citation omitted).  In *United States v. Booker*, the Supreme court held that the United States Sentencing Guidelines were "effectively advisory."  543 U.S. 220, 245 (2005).  Expounding on the *Booker* decision, *Kimbrough* recognized that the federal courts may consider "the disparity between the Guidelines' treatment of crack and powder cocaine offenses" when determining whether "a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."  *See Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (holding guidelines' harsher treatment of crack cocaine offenses may warrant a downward departure from the guideline range).  In the defendant's case, Mr. Quintana did ask the court to consider imposing a sentence below the guidelines, though he did not specifically mention the *Kimbrough* case.  (Doc. 70, pp. 31-33).  The court, however, was aware of its discretion to determine the appropriate sentence, the guidelines notwithstanding. (Doc. 70, pp. 31-34).  Noting the advisory nature of the guidelines, the court nonetheless concluded a sentence within those guidelines was appropriate to accomplish the purposes of sentencing.  (Doc. 70, pp. 33-34).  Mr. Quintana's failure to mention a particular case while making an argument is not unreasonable.  *See Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995) ("[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."); *see also White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992) ("We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.").  Further, defendant has not shown that mention of the *Kimbrough* decision would have altered his sentence.  *See Strickland*, 466 U.S. at 694 ("[D]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.").  Here, the court was aware that it had discretion to sentence the defendant outside the advisory guidelines, but ultimately decided a sentence within the guidelines was appropriate after reviewing the defendant's background and offense.  (Doc. 70, pp. 33-34).  The defendant has not shown that reference to the *Kimbrough* decision would have changed the sentence imposed.

As a final matter, the defendant has requested a hearing to present evidence supporting his allegations.  Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing upon defendant's motion to vacate sentence, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  In support of such motion, however, defendant must proffer credible and specific evidence entitling him to relief.  *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 n.7 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support").  Here, defendant's claims are without merit and refuted by the record.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record.").  This court may therefore deny the requested relief without an evidentiary hearing.

Accordingly, it is respectfully RECOMMENDED:

That the motion to vacate, set aside, or correct sentence (doc. 79) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 1st day of August, 2012.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).